PEOPLE v BUIE (ON REMAND)

Docket No. 278732. Submitted July 3, 2012, at Lansing. Decided October 2, 2012, at 9:00 a.m. Leave to appeal denied, 494 Mich 854.

James Henry Buie was convicted by a jury in the Kent Circuit Court, Dennis B. Leiber, J., of two counts of first-degree criminal sexual conduct involving a victim under the age of 13, three counts of first-degree criminal sexual conduct involving the use of a weapon, and possession of a firearm during the commission of a felony. Defendant appealed, alleging in part that he was deprived of his constitutional right to confront the witnesses against him. The Court of Appeals, BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ., remanded the case to the trial court to determine whether the video-conferencing procedure used to present the testimony of a doctor and a DNA expert was necessary to further a public policy or state interest important enough to outweigh defendant's confrontation rights. 285 Mich App 401 (2009). Both parties sought leave to appeal in the Supreme Court, but both applications were denied, and the Supreme Court further instructed that the trial court was required to make findings regarding good cause and consent to the video-conferencing procedure pursuant to MCR 6.006(C). 485 Mich 1105 (2010). After remand, the Court of Appeals, BECKERING, P.J., and M. J. KELLY, J. (WHITBECK, J., concurring) reversed and remanded for a new trial, finding that the trial court had plainly erred by permitting witnesses to testify through two-way interactive video. 291 Mich App 259 (2011). The prosecutor sought leave to appeal in the Supreme Court, which reversed, concluding that defendant had waived his right to confrontation and that MCR 6.006 had not been violated. The Supreme Court then remanded the case to the Court of Appeals for consideration of defendant's remaining issues on appeal. 491 Mich 294 (2012).

On remand, the Court of Appeals *held*:

1. A defendant has the right to be present during voir dire. Only a defendant may waive his statutory and constitutional right to be present during his or her trial. Waiver occurs when the defendant intentionally, understandingly, and voluntarily relinquishes or abandons a known right. The waiver of the right to be

present cannot be presumed from a silent record. A defendant can waive the right to be present at trial by voluntarily being absent after the trial has begun or by being so disorderly or disruptive that his trial cannot be continued while he is present. Reversal was not required on the basis of defendant's temporary absence during voir dire. There was insufficient evidence to establish that defendant voluntarily waived his right to be present in the courtroom. While defendant requested to be excused from the courtroom during voir dire, there was insufficient evidence on the record to conclude that he had been informed of his constitutional right to be present. Defendant also did not waive his right to be present during voir dire proceedings by interrupting the process once and requesting to leave the courtroom. However, there was no reasonable possibility that defendant was prejudiced by his absence from the courtroom during voir dire for a short period of time. Reversal was not warranted because the evidence of defendant's guilt was overwhelming and there was no evidence that the alleged error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

2. The Sixth Amendment right to counsel extends to all critical stages during a criminal prosecution where counsel's absence might harm a defendant's right to a fair trial. A total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal. Effective assistance of counsel is presumed and ineffective assistance is established if a defendant proves that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Because defendant was represented by counsel at the preliminary examination and at sentencing, defendant cannot support a denial of the right to counsel claim on that basis. Defendant was also not denied the effective assistance of counsel. Defendant cannot allege that counsel was ineffective for failing to meet with him when defendant failed to cooperate with his counsel's staff during a visit. There was no evidence that defense counsel's performance fell below an objective standard of reasonableness because evidence demonstrated that defense counsel pursued a valid theory of defense, properly cross-examined all witnesses, and made appropriate objections to evidence. Defendant was also not denied the effective assistance of counsel at sentencing because he failed to specify what mitigating factors counsel should have presented at sentencing, evidence linking defendant to the crimes was overwhelming, and a challenge to the guidelines would have been futile.

3. A defendant is not entitled to have the attorney of his choice appointed simply by requesting the replacement of the attorney who was originally appointed. A defendant is entitled to substitution of appointed counsel only when discharge of the first attorney is for good cause and does not disrupt the judicial process. Good cause is determined on the basis of the individual facts of each case. A complete breakdown of the attorney-client relationship or disagreement over whether a particular line of defense should be pursued may justify appointing new counsel. However, reversal is not required on the basis of an allegation of attorney disinterest unless the record shows that the lawyer assigned to represent the defendant was in fact inattentive to his or her responsibilities. Substitution of counsel is not appropriate if the defendant deliberately caused the breakdown in the relationship by not cooperating with his counsel. The trial court did not abuse its discretion by failing to appoint substitute counsel because defendant failed to respond to defense counsel's staff when an interview was attempted. In addition, defendant was difficult to meet with because he was moved between facilities and defendant refused to attend a preliminary hearing.

4. MCL 768.27a allows the admission of evidence that a defendant charged with a sexual offense against a minor committed another sexual offense against a minor; however, under MRE 403 the probative value of such relevant evidence must not be substantially outweighed by the danger of unfair prejudice. Although not exhaustive, for purposes of determining whether to admit other-acts evidence under MCL 768.27a, the court may consider (1) whether the other acts and the charged crime were dissimilar, (2) whether the other acts and the charged crime occurred in temporal proximity, (3) whether the other acts occurred infrequently, (4) whether there were intervening acts, (5) whether the evidence supporting the occurrence of the other acts was not reliable, and (6) whether there was a lack of need for evidence beyond the complainant's and the defendant's testimony. The trial court did not abuse its discretion by admitting LB's testimony that defendant had previously been convicted of sexually assaulting her when she was 13 years old. The testimony established that defendant had a history of assaulting young girls, the manner in which the prior and charged assaults occurred was similar, the events occurred within a three-year time span, and the evidence of each crime was supported by DNA evidence that established defendant as the offender. The highly probative value of the evidence demonstrating defendant's propensity to attack young girls was not substantially outweighed by a danger of unfair prejudice.

5. MCL 768.27a does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions.

6. The prosecutor did not have to justify the admission of LB's testimony under MRE 404(b) because it was admissible under MCL 768.27a.

Affirmed.

1. CRIMINAL LAW — VOIR DIRE — PRESENCE OF DEFENDANT — WAIVER.

A defendant has the right to be present during voir dire; only a defendant may waive his statutory and constitutional right to be present during his or her trial; waiver occurs when the defendant intentionally, understandingly, and voluntarily relinquishes or abandons a known right; the waiver of the right to be present cannot be presumed from a silent record; a defendant can waive the right to be present at trial by voluntarily being absent after the trial has begun or by being so disorderly or disruptive that his trial cannot be continued while he is present.

2. CRIMINAL LAW — ATTORNEY AND CLIENT — COURT-APPOINTED COUNSEL — SUBSTITUTION OF COUNSEL — BREAKDOWN OF ATTORNEY-CLIENT RELATIONSHIP.

A defendant is not entitled to have the attorney of his choice appointed simply by requesting the replacement of the attorney who was originally appointed; a defendant is entitled to substitution of appointed counsel only when discharge of the first attorney is for good cause and does not disrupt the judicial process; good cause is determined on the basis of the individual facts of each case; a complete breakdown of the attorney-client relationship or disagreement over whether a particular line of defense should be pursued may justify appointing new counsel; reversal is not required on the basis of an allegation of attorney disinterest unless the record shows that the lawyer assigned to represent the defendant was in fact inattentive to his or her responsibilities; substitution of counsel is not appropriate if the defendant deliberately caused the breakdown in the relationship by not cooperating with his counsel.

3. CRIMINAL LAW — EVIDENCE — CRIMINAL SEXUAL CONDUCT — OTHER-ACTS EVIDENCE.

MCL 768.27a allows the admission of evidence that a defendant charged with a sexual offense against a minor committed another sexual offense against a minor; however, under MRE 403 the probative value of such relevant evidence must not be substantially outweighed by the danger of unfair prejudice; although not

exhaustive, for purposes of determining whether to admit other-acts evidence under MCL 768.27a, the court may consider (1) whether the other acts and the charged crime were dissimilar, (2) whether the other acts and the charged crime occurred in temporal proximity, (3) whether the other acts occurred infrequently, (4) whether there were intervening acts, (5) whether the evidence supporting the occurrence of the other acts was not reliable, and (6) whether there was a lack of need for evidence beyond the complainant's and the defendant's testimony.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Jonathan R. Sacks*) for defendant.

ON REMAND

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

PER CURIAM. This is the third time that defendant James Henry Buie's appeal is before this Court. A jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC) involving a victim under the age of 13, MCL 750.520b(1)(a), three counts of first-degree criminal sexual conduct involving the use of a weapon, MCL 750.520b(1)(e), and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant appealed his convictions, and in *People v Buie,* 285 Mich App 401, 418-419; 775 NW2d 817 (2009), we remanded to the trial court to determine whether the video-conferencing procedure used to present the testimony of a doctor and a DNA expert was necessary to further a public policy or state interest important enough to outweigh defendant's confrontation rights. In *People v Buie,* 485 Mich 1105, 1105-1106

(2010), our Supreme Court ordered that, in addition to the above determination, the trial court was required to make findings regarding good cause and consent to the video-conferencing procedure pursuant to MCR 6.006(C). After remand, in *People v Buie (After Remand)*, 291 Mich App 259, 274-276; 804 NW2d 790 (2011), we held that the trial court plainly erred by permitting witnesses to testify through two-way interactive video, warranting reversal and a new trial. However, in *People v Buie*, 491 Mich 294, 297; 817 NW2d 33 (2012), our Supreme Court reversed, concluding that defendant had waived his right to confrontation and that MCR 6.006(C) had not been violated. The Supreme Court then remanded this case to this Court for consideration of defendant's remaining issues on appeal. *Id.* at 320. Because we find that defendant's remaining issues on appeal lack merit, we affirm defendant's convictions.

## I. BASIC FACTS

The underlying facts of this case are set forth in greater detail in our two prior opinions; however, we will briefly summarize them here. Defendant was convicted of sexually assaulting three females: BS and two minors (ages 13 and 9). BS invited defendant into the apartment where she was babysitting the two minors in hopes of trading sex for cocaine, but defendant produced a firearm during the event and sexually assaulted all three victims. Hours later, a physician examined the minor victims and concluded that they had suffered sexual trauma to their genitals. An employee with the Forensic Biology Unit of the State Police concluded that analysis of the DNA samples linked the evidence taken from the victims to defendant.

A jury convicted defendant as described above, and the trial court sentenced him as a fourth-offense ha-

bitual offender, MCL 769.12, to concurrent terms of life imprisonment for each CSC conviction and to a consecutive two-year term of imprisonment for the felony-firearm conviction.

## II. ANALYSIS

### A. DEFENDANT'S ABSENCE DURING PORTIONS OF VOIR DIRE

Defendant argues that he is entitled to a new trial because his constitutional and statutory rights to be present during his trial were violated when the court held a significant portion of voir dire outside his presence. We disagree.

At trial, defendant did not object to his absence from the courtroom during voir dire. Therefore, the issue is unpreserved. See *People v Carines*, 460 Mich 750, 761-765; 597 NW2d 130 (1999). We review for plain error "unpreserved claims of constitutional error." *Id.* at 764. To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred, (2) the error must be plain, and (3) the error must have affected the defendant's substantial rights, which generally requires the defendant to show that the error affected the outcome of the lower-court proceedings. *Id.* at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* at 763, citing *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

The Michigan Supreme Court has recognized that a defendant has a right to be present during voir dire. *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). This Court has recognized that only "a defendant

may waive both his statutory and constitutional right to be present during his trial." *People v Montgomery*, 64 Mich App 101, 103; 235 NW2d 75 (1975). Waiver is defined as "the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7 (quotation marks and citation omitted). A defendant can waive his right to be present by (1) voluntarily being absent after the trial has begun, *People v Swan*, 394 Mich 451, 452; 231 NW2d 651 (1975), or (2) being "so disorderly or disruptive that his trial cannot be continued while he is present," *Mallory*, 421 Mich at 248.

"It is not seriously questioned that a defendant has the power to waive *constitutional* rights, provided he does so intelligently, understandingly and voluntarily." *People v Brown*, 46 Mich App 592, 597; 208 NW2d 590, aff'd 393 Mich 174 (1973). "A valid waiver of a defendant's presence at trial consists of a specific knowledge of the constitutional right and an intentional decision to abandon the protection of the constitutional right." *People v. Woods*, 172 Mich App 476, 479; 432 NW2d 736 (1988); see also *People v Palmerton*, 200 Mich App 302, 303; 503 NW2d 663 (1993). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted).

Defendant argues that he did not waive his right to be present during voir dire when he said, "I don't want to set [sic] in here myself. I would like to be excused myself [sic]." Rather, defendant contends his statement "represented an unfortunate reaction and expression of frustration after the judge 'excused' a potential panelist, and the trial court questioned a panelist who initially said they could not be fair."

### 1. VOLUNTARY WAIVER OF RIGHT TO BE PRESENT AT TRIAL

The record establishes that defendant specifically asked to be excused from the courtroom. As such, it is reasonable to conclude that he voluntarily and intentionally wished to be absent from the voir dire in progress. The record is silent, however, as to whether he was ever specifically apprised of his constitutional right to be present. Therefore, a finding that defendant knowingly or understandingly waived the protection of his constitutional right cannot be made. See *Montgomery*, 64 Mich App at 103 (noting that this Court cannot presume that the defendant waived his constitutional right on the basis of a silent or sketchy record); *People v Thompson*, 52 Mich App 262, 267; 217 NW2d 63 (1974) (stating that waiver of the right to be present cannot be presumed from a silent record).

### 2. GROUNDS FOR REMOVAL FROM COURTROOM

This Court has recognized that it is within the trial court's discretion to remove a defendant from the courtroom if the defendant's behavior is disruptive. *People v Harris*, 80 Mich App 228, 229-230; 263 NW2d 40 (1977). In *Harris*, the defendant had "repeatedly interrupted the trial with his willful and disorderly behavior, making it impossible to carry on the proceedings in his presence." *Id.* at 230. The trial court had warned the defendant that he would be removed from the courtroom if the behavior continued. *Id.* Once the defendant was removed, the trial court had offered him the opportunity to return if he would behave appropriately. *Id.* The defendant refused, and this Court ultimately concluded on review that "the trial court acted within the proper scope of discretion in removing defendant from the proceedings." *Id.*

The record in this case indicates that defendant interrupted voir dire once before he asked to leave and was removed from the courtroom. Although he had a prior history of acting out and disrupting the proceedings as evidenced during his second preliminary examination,[1] defendant's conduct during voir dire was not repeatedly disruptive, and he was not continually warned by the court to modify his behavior to avoid removal, as occurred in *Harris*, 80 Mich App at 230. Defendant's one outspoken moment, by itself, does not justify removal from the courtroom. See *id.* Thus, we conclude that defendant did not waive his right to be present by interrupting the voir dire proceedings. See *id.*

### 3. PREJUDICE ARISING FROM DEFENDANT'S TEMPORARY ABSENCE FROM THE TRIAL

"[T]he test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Armstrong*, 212 Mich App 121, 129; 536 NW2d 789 (1995). The Michigan Supreme Court has also held that "it is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial."

---

[1] Defendant was extremely disruptive during the second preliminary-examination hearing when he continually interrupted the trial court. Defendant was asked repeatedly to be quiet. However, defendant refused to comply, and the trial court warned defendant that he would be removed from the courtroom. Despite this warning, defendant continued to be disruptive and refused to be quiet while a witness was testifying. The trial court attempted to carry on despite these interruptions but was unable to do so. Eventually, the trial court excused defendant and had him placed in "lockup" where he would be able to hear the testimony through the speaker system. After defendant was allowed to return to the courtroom for the conclusion of the hearing, the trial court again told the defendant that disruptive behavior would not be tolerated and that he would be excused again if it were to continue.

*People v Morgan,* 400 Mich 527, 535; 255 NW2d 603 (1977).

Here, defendant was absent for only a short period[2] during voir dire before he returned, and he was present for the remainder of the trial. During his absence, several jurors were questioned, but defendant returned while questioning continued. There is no evidence in the record to support a finding that there was any "reasonable possibility" that defendant was prejudiced by this short absence. *Armstrong,* 212 Mich App at 129. Moreover, reversal is not warranted because the evidence does not support that defendant is actually innocent or that the alleged error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Carines,* 460 Mich at 763-764. First, evidence of defendant's guilt was overwhelming and included BS's identification of defendant as the man who assaulted her, medical testimony that the minors had injuries consistent with their accounts of sexual assault, and a finding of defendant's DNA on multiple pieces of evidence, including a rectal swab taken from one of the minors. Second, defendant was absent for only a short time during voir dire, and he was allowed to return once he agreed to behave. Further, he was present for the remainder of the trial. Defendant is not entitled to a reversal on the basis of his temporary absence from voir dire.

### B. RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied his Sixth Amendment right to counsel and effective assistance of

---

[2] Defendant was removed from the courtroom on page 32 of the record and he returned to the courtroom at page 69. Thus, in total, defendant was not present for 37 pages of voir dire out of a 103-page transcript. The record does not indicate the length of time of defendant's absence, but the record suggests that defendant was present for the majority of voir dire.

counsel because his counsel failed to (1) visit him often before trial and (2) argue at sentencing "some sort of combination of mitigation or guidelines challenge." We disagree.

We review defendant's claims pertaining to the presence and performance of his trial counsel as described above for errors apparent on the record because no *Ginther*[3] hearing took place related to these issues.[4] *People v Knapp*, 244 Mich App 361, 385; 624 NW2d 227 (2001).

The Sixth Amendment, as applied to states by the Fourteenth Amendment, guarantees that the accused in a criminal prosecution "shall enjoy the right . . . to have the Assistance of Counsel for his defence." US Const, Am VI; *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). This right to counsel "extends to all 'critical' stages of the proceedings where counsel's absence might harm defendant's right to a fair trial." *People v Burhans*, 166 Mich App 758, 764; 421 NW2d 285 (1988), citing *United States v Wade*, 388 US 218, 228; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). "The right to counsel attaches and represents a critical stage 'only at or after the initiation of adversary judicial proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment.' " *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994) (citation omitted). "It is well established that a total or complete deprivation of the right to counsel at a critical stage of a

---

[3] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[4] Although an evidentiary hearing was held pursuant to remand orders from both this Court and the Supreme Court, the testimony pertained to the taking of testimony by way of video conferencing at trial. Defendant's arguments regarding the effectiveness of his counsel in allowing video testimony have been resolved by the Supreme Court and are not presently before us.

criminal proceeding is a structural error requiring automatic reversal." *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005).

To prevail on his claim of ineffective assistance of counsel, defendant must meet the two-part test stated by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Carbin*, 463 Mich 590, 599–600; 623 NW2d 884 (2001). First, defendant must show that his counsel's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 US at 687. To do so, defendant must show that his counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-688. This Court presumes that counsel rendered adequate assistance. *Id.* at 690. Second, defendant must show that his counsel's deficient performance prejudiced his defense. *Id.* at 687. To do so, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Defendant maintains that his Sixth Amendment right to counsel was denied because defense counsel did not meet with him before the preliminary exam and did not discuss trial strategy with him. These allegations are properly categorized as claims of ineffective assistance of counsel, but they have no merit as such. See *People v Mitchell*, 454 Mich 145, 161 n 15; 560 NW2d 600 (1997), vacated on other grounds 536 US 901; 122 S Ct 2354; 153 L Ed 2d 177 (2002) ("Even if defendant and his mother were fully credible and [defense counsel] did not contact the witness and only met with the defendant three times, this is not a 'denial of counsel' during a critical stage. Rather, these are allegations of

deficient performance by counsel that must meet the *Strickland* standard."). There is no doubt that defendant was entitled to representation by counsel at the preliminary hearing, and he enjoyed such representation because the record indicates that trial counsel was present throughout the preliminary exam. See *Anderson*, 446 Mich at 402.

Defendant also maintains that defense counsel was ineffective because she "never met with [defendant] before the preliminary exam and never reviewed any sort of strategy before trial." Defendant claims that this inaction was prejudicial because "actually meeting with [defendant] to 'really sit down and go over our defense tactics' would have built some sort of relationship that might have resulted in accepting the plea bargain." However, the record establishes that defendant failed to cooperate with his defense counsel. At the preliminary hearing, defense counsel made the following statement:

> Your honor, I have not had an opportunity to speak with [defendant]. The history of this case which dates back to June of this year, my investigator and summer intern went out to speak with [defendant] at the County Jail after we were assigned to this case. At the time [defendant] was nonresponsive so my investigator was unable to speak with him. When we had the first preliminary examination scheduled on the 15th of June, [defendant] refused to come over from the County Jail so the matter was adjourned . . . .
>
> * * *
>
> [Defendant] has been -- has a [sic] another case of a similar nature pending in Ionia County and has been there pretty much on and off when he wasn't in Ann Arbor for the pendency of these proceedings. So I have not really had an opportunity to speak with him, and the only time that somebody from my office had a chance to speak with him he was nonresponsive.

Further, at trial, defense counsel told the trial court that defendant had provided her with a list of questions that he wished defense counsel to ask of certain witnesses. Defense counsel stated that she had used her discretion in utilizing this list and noted that when she had asked one of the questions requested by defendant, the unexpected answer conflicted with her theory of the case, which was that defendant was not the perpetrator. Defense counsel stated that

> I would not have asked the question, and I want the record to reflect that, although I have given [defendant] a lot of latitude here and that we have not had an opportunity to really sit down and go over our defense tactics and I am respecting his wishes and the questions he wishes to pose, I'm going to let the Court know at this point I'm going to exercise a heck of [sic] more restraint . . . .

This Court has noted that a defendant may not request substitute counsel if the defendant "purposely break[s] down the attorney-client relationship by refusing to cooperate with his assigned attorney." *People v Meyers (On Remand)*, 124 Mich App 148, 166-167; 335 NW2d 189 (1983). Similarly, defendant cannot allege that defense counsel was ineffective for failing to meet with him when defendant failed to cooperate with her staff during their visit.[5] Additionally, because defendant was moved between several facilities before trial, defense counsel's ability to meet with defendant was

---

[5] Although not binding, we find persuasive this Court's reasoning in *People v Pointer*, unpublished opinion per curiam of the Court of Appeals, issued September 18, 2007 (Docket No. 270327), p 3 (holding that the defendant received effective assistance of counsel because the record indicated that the defendant's actions had hindered counsel's attempts to represent him and that counsel had provided adequate representation), and *People v Cataldo*, unpublished opinion per curiam of the Court of Appeals, issued November 17, 2000 (Docket No. 219216), p 3 ("[T]he record makes clear that any deficiency resulted from defendant's failure to cooperate with his attorney, not from his attorney's inaction.").

hindered. Nevertheless, the record demonstrated that defense counsel pursued a valid theory of defense, vigorously cross-examined witnesses, objected to improper evidence when necessary, and presented an adequate closing argument. Defendant admits on appeal that "[t]he record reflects that counsel properly cross-examined all witnesses and offered a valid theory of defense." Therefore, defendant is unable to establish that defense counsel's performance fell below an objective standard of reasonableness and that a reasonable possibility exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. Therefore, defendant's Sixth Amendment right to counsel was not violated. *Id.*

Defendant also alleges that he was denied his right to counsel because defense counsel failed to offer mitigating circumstances or to challenge the sentencing guidelines at the sentencing hearing. This is a claim of ineffective assistance of counsel, rather than a denial-of-counsel claim as asserted by defendant. *Mitchell*, 454 Mich at 161 n 15. The Michigan Supreme Court has recognized that "[s]entencing is a critical stage of a criminal prosecution at which the right to counsel attaches." *People v Wakeford*, 418 Mich 95, 121; 341 NW2d 68 (1983). Defendant's claim that defense counsel was "virtually absent" and, thus, violated his Sixth Amendment right to counsel at critical stages of the proceedings is meritless. The record indicates that defense counsel was present throughout the sentencing hearing. Therefore, defendant was not deprived of his right to counsel. *People v Dickerson*, 17 Mich App 201, 203-204; 169 NW2d 336 (1969) (holding that the defendant was denied his Sixth Amendment right to counsel because he was not represented by counsel at sentencing).

Further, defendant alleges that he was denied effective assistance of counsel because "she offered absolutely no sort of advocacy, beyond attesting to no presentence inaccuracies or guidelines errors." Defendant maintains that defense counsel should have offered "some sort of combination of mitigation or guidelines challenge." The Michigan Supreme Court has recognized that "[t]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *Mitchell*, 454 Mich at 164 (quotation marks and citation omitted). In addition, "[i]t is well established that defense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008). In his brief on appeal, defendant fails to specify what mitigating factors defense counsel should have presented at sentencing and what guideline challenges would have been appropriate. Defendant has thus not established the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Moreover, testimony and DNA evidence at trial proved that defendant repeatedly assaulted two young girls. To require defense counsel to argue unknown mitigating factors or an unsubstantiated guidelines' challenge would have been futile in this case. *Brown*, 279 Mich App at 142. There is no error evident in the record to support defendant's claim that he was denied the effective assistance of counsel at sentencing.

C. DENIAL OF DEFENDANT'S MOTION FOR SUBSTITUTE COUNSEL

Defendant argues that the trial court erred when it did not either appoint substitute counsel or hold an evidentiary hearing when defendant sought substitute

counsel based upon a breakdown in communications between himself and his trial counsel. We disagree.

"The decision regarding substitution of counsel is within the sound discretion of the trial court and will not be upset on appeal absent a showing of an abuse of that discretion." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).

As discussed earlier, the Sixth Amendment guarantees a defendant's right to counsel. *Russell*, 471 Mich at 187. However, defendant "is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *Mack*, 190 Mich App at 14. "A defendant is only entitled to a substitution of appointed counsel when discharge of the first attorney is for 'good cause' and does not disrupt the judicial process." *People v O'Brien*, 89 Mich App 704, 708; 282 NW2d 190 (1979) (quotation marks and citation omitted). The circumstances that would justify good cause rest on the individual facts in each case. *Id*.

Our Supreme Court has recognized that, while an allegation of attorney disinterest warrants consideration by a trial court of the defendant's allegation, a defendant's conviction will not be set aside, even in the absence of judicial consideration of the defendant's allegation, if "the record does not show that the lawyer assigned to represent [the defendant] was in fact inattentive to his [or her] responsibilities." *Ginther*, 390 Mich at 442. In addition, this Court has recognized that "[a] complete breakdown of the attorney-client relationship or disagreement over whether a particular line of defense should be pursued may justify appointing new counsel." *O'Brien*, 89 Mich App at 708. In *Meyers*, 124 Mich App at 165, the defendant requested substitute trial counsel because the defendant was having

difficulty communicating with his counsel. "[The defendant] informed the [trial] court that he objected to his attorney because he was not the attorney of the defendant's choice, that he and his attorney disagreed about the case, and that he did not like the language his defense attorney used toward him." *Id.* at 166. However, the defendant had failed to cooperate with his counsel, and counsel expressed a willingness to work with the defendant. *Id.* "[The defendant] did not assert that his attorney was inadequate, lacking in diligence, or disinterested in his case." *Id.* Therefore, this Court held that there was not enough evidence to prove that the attorney-client relationship had broken down to a point where the appointment of substitute counsel was necessary. *Id.* Further, this Court has held that a defendant may not deliberately cause a breakdown of the attorney-client relationship by not cooperating with his counsel and then assert that there is a good reason for appointing new counsel. *Id.* at 166-167; see also *People v Cumbus*, 143 Mich App 115, 121; 371 NW2d 493 (1985) (noting that the defendant was not entitled to substitution of counsel because the breakdown in the attorney-relationship was caused by the defendant and because defendant failed to demonstrate that he had been prejudiced by the trial court's denial of his motion for substitute counsel).

In the present case, the first preliminary examination was scheduled for June 15, 2005, but defendant refused to attend. At the preliminary hearing on September 22, 2005, as described in part II(B) of this opinion, defendant's trial counsel noted that she was having difficulty contacting defendant because he was being moved around to various locations. She also noted that "the only time that somebody from my office had a chance to speak with him he was unresponsive." Further, at the preliminary hearing on October 3, 2005,

defendant stated to the trial court, "Your honor, I never did really get a chance to talk to my prior attorney, the—the female. So I never did really know who was my attorney." In a November 30, 2005, letter from trial counsel to defendant, details of the problems between trial counsel and defendant were set forth. By way of that correspondence, defense counsel forwarded copies of the police report, amended felony information, DNA results, and a competency report to defendant. She also bluntly warned defendant that his attempt to manipulate the system by "playing [the] crazy card" and being disruptive in court would not be successful.

In an August 15, 2006, pro se motion, defendant requested substitute counsel because trial counsel had yet to visit him in jail and because there had allegedly been a breakdown in his relationship with the public defender's office from the beginning. Defendant wrote, "I have been verbally and in writing accused [sic] of this case in their minds." The trial court did not consider the merits of defendant's claims in his pro per motion because counsel represented defendant.

The evidence in the record demonstrates that defendant and trial counsel did not have a completely amicable relationship. However, "the record does not show that [defendant's attorney] was in fact inattentive to [her] responsibilities," inadequate, or disinterested. *Ginther*, 390 Mich at 441-442; *Meyers*, 124 Mich App at 166-167. To the contrary, the evidence demonstrates that well over a year before trial began, defense counsel had gathered necessary materials, was familiar with the case, and was realistically informing defendant of the damaging nature of the DNA evidence and frivolity of his claimed insanity. Defendant complained that trial counsel had not visited him in jail; however, it appears from the record that this was not because of a lack of

effort on counsel's part. For a time, defendant was being moved around to different facilities, and counsel was unable to contact him. When counsel sent representatives to speak with defendant, he was nonresponsive, and he also refused to attend a preliminary hearing. By not responding to trial counsel's staff inquiries, defendant cannot now use lack of communication as justification for substitute counsel when he failed to respond. See *Meyers*, 124 Mich App at 166-167; see also *Cumbus*, 143 Mich App at 121. Accordingly, the trial court's failure to appoint substitute counsel was not an abuse of discretion, *Mack*, 190 Mich App at 14, because it did not fall outside the range of principled outcomes, *People v Terrell*, 289 Mich App 553, 558-559; 797 NW2d 684 (2010).

### D. OTHER-ACTS TESTIMONY

Defendant argues that the testimony of LB, the victim of a 2004 sexual assault by defendant, should not have been admitted at trial because it was inadmissible other-acts evidence under MRE 404(b), was more prejudicial than probative and therefore inadmissible under MRE 403, and inadmissible under MCL 768.27a because that statute violates the Ex Post Facto Clauses of the United States and Michigan Constitutions, US Const, art I, § 10; Const 1963, art 1, § 10. We disagree.

At trial defendant objected to the admission of LB's testimony, and the prosecution argued that the evidence was admissible under MCL 768.27a. The trial court ruled that the testimony was admissible; therefore, this issue is preserved for appeal. *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995) (issues raised before and decided by the trial court are preserved for review.). However, defendant did not object to LB's testimony on the basis that it violated MRE 404(b) or

the Ex Post Facto Clauses of the United States and Michigan Constitutions. Thus, these claims are unpreserved for appellate review. See *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004) ("Defendant failed to preserve this claim of error because he did not specifically object at trial on this ground . . . .").

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). However, "[w]hen the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *Id.* (quotation marks and citation omitted). We review defendant's unpreserved arguments for plain error. *Carines*, 460 Mich at 763-765.

MCL 768.27a states that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." A listed offense includes first-degree criminal sexual conduct, MCL 750.520b, and second-degree criminal sexual conduct, MCL 750.520c. *People v Dobek*, 274 Mich App 58, 88 n 16; 732 NW2d 546 (2007) ("The listed offenses [set forth in then MCL 28.722(e)($x$)] include the various forms of criminal sexual conduct.").[6] In *Pattison*, 276 Mich App at 620, this Court held that, "[i]n cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." The

---

[6] Defendant was convicted in 2007. The statute defining listed offenses was amended by 2011 PA 17, effective July 1, 2011. Listed offenses are now set forth in MCL 28.722 (k), (s), (u), and (w).

*Pattison* Court concluded that the trial court did not err when it admitted testimony "regarding defendant's alleged sexual abuse of four other minors." *Id.* at 618. However, this Court cautioned "trial courts to take seriously their responsibility to weigh the probative value of the evidence against its undue prejudicial effect in each case before admitting the evidence. See MRE 403." *Id.* at 621; see also *People v Watkins*, 491 Mich 450, 481-486; 818 NW2d 296 (2012) (holding that evidence that is admissible under MCL 768.27a may still be excluded under MRE 403). MRE 403 states in part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

> [W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. . . .
>
> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

In the present case, defendant was charged with multiple counts of first-degree criminal sexual conduct.

He had previously been convicted of sexually assaulting LB when she was 13 years old. LB's testimony established that defendant had a history of sexually assaulting young girls. The testimony also indicated that the manner in which the sexual assaults occurred in both instances were similar. Specifically, defendant engaged his victims initially under a ruse and then proceeded to forcefully sexually assault them while threatening them with a weapon. Multiple penetrations occurred, and the sexual positions were similar. The subject crimes and the incident involving LB also occurred within three years of one another. The evidence of each crime was supported by DNA evidence, establishing defendant as the offender. Evidence of the assault on LB was also relevant in explaining how the police had come into possession of defendant's DNA for comparison in this case. Although the evidence was highly prejudicial, it was also highly probative of defendant's propensity for sexually assaulting young girls. See *Pattison*, 276 Mich App at 615-616 (holding that evidence of the tactics the defendant used against a prior victim to commit CSC was probative of whether he used the same tactics to gain sexual favors from his daughter and its admission did not violate MRE 403). Evidence is not unfairly prejudicial under MRE 403 merely because it damages a party's case. *People v Vasher*, 449 Mich 494, 502; 537 NW2d 168 (1995). Rather, undue prejudice refers to "an undue tendency to move the tribunal to decide on an improper basis." *Id.* at 501. In this case, defendant has not demonstrated that the probative value of the evidence was substantially outweighed by the danger of undue prejudice. The trial court did not abuse its discretion by admitting this evidence under MCL 768.27a.

Defendant also claims that the application of MCL 768.27a violates the Ex Post Facto Clauses of the United

States and Michigan Constitutions because the sexual assaults occurred before the enactment of this particular statute. However, he concedes that this Court has already determined that this statute is not unconstitutional on this basis. Defendant states that he raised the issue solely to preserve the issue for further review. In *Pattison*, 276 Mich App at 619, this Court observed that this "altered standard does not lower the quantum of proof or value of the evidence needed to convict a defendant." Thus, this Court held that "the standard for obtaining a conviction against [the] defendant has not changed, and the application of MCL 768.27a to this case does not violate the Ex Post Facto Clause." *Id.*; see also *People v Wilcox*, 280 Mich App 53, 55-56; 761 NW2d 466 (2008), rev'd on other grounds 486 Mich 60 (2010); *People v Schultz*, 278 Mich App 776, 778-779; 754 NW2d 925 (2008). Under this Court's previous holdings, defendant's claim is meritless. *Pattison*, 276 Mich App at 619; *Wilcox*, 280 Mich App at 55-56; *Schultz*, 278 Mich App at 778-779.

Defendant also argues that the evidence was not admissible under MRE 404(b). In *Watkins*, 491 Mich at 472-481, our Supreme Court concluded that MCL 768.27a permits a prosecutor to introduce evidence of a defendant's commission of another listed offense against a minor without having to justify its admissibility under MRE 404(b). As previously discussed, the evidence was properly admitted under MCL 768.27a. Therefore, the prosecution did not also have to justify the admission of LB's testimony under MRE 404(b).

Accordingly, LB's testimony was properly admitted under MRE 768.27a.

Affirmed.

BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ., concurred.