# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 20, 2018

v

DAJUAN KEITH WATSON,

Defendant-Appellant.

No. 338270
Wayne Circuit Court
LC No. 16-003595-01-FC

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

Defendant was convicted of robbing and shooting to death an Uber driver, Modou Diagne, in March 2016.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues on appeal that the evidence was insufficient to establish his identity as the perpetrator of these crimes beyond a reasonable doubt. We disagree.

This Court will review a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). It is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

It is well-established that identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The duty of the prosecutor to identify the accused is an element of his general duty to prove defendant's guilt beyond a reasonable doubt. Certainly proof of defendant's connection with the alleged offense is an indispensable element of that duty." *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Direct testimony, circumstantial evidence, and the reasonable inferences arising from circumstantial evidence may provide satisfactory proof of the elements of an offense. *People v Johnson*, 146 Mich App 429,

434; 381 NW2d 740 (1985). This includes the identity of the perpetrator. *Kern*, 6 Mich App at 409-410; see also *People v Williams*, 39 Mich App 234, 252; 197 NW2d 918 (1972) (direct testimony and circumstantial evidence were "amply sufficient" to find that the defendant perpetrated an armed robbery).

There is sufficient record evidence for a reasonable jury to conclude that defendant was the perpetrator of felony murder, armed robbery, and felony-firearm. MCL 750.316(1)(b) provides that a person is guilty of first-degree murder for murder committed in the perpetration of certain crimes, including robbery. To prove armed robbery under MCL 750.529, the prosecution must establish the following elements:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 338300, October 2, 2018); slip op at 9, quoting *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007)].

A defendant is guilty of felony-firearm when he possesses a firearm during the commission of, or the attempt to commit, a felony. *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (citation omitted). Defendant does not argue that sufficient evidence is lacking for a certain element of any of the three crimes, but rather, that there is an identification issue.

The evidence was sufficient to convict defendant as the perpetrator of these crimes. The victim's wife testified that the victim was working as an Uber driver on March 18, 2016, and she last spoke to him around 11:40 p.m. The records from the victim's tether tracking his location matched the Uber records of the fares requested by defendant from Chester Street to Bewick Street, and from Bewick Street to Pacific Avenue, as well as the locations of the cellular telephone towers "pinged" by defendant's telephone. The testimony of defendant's girlfriend, Tiara Whitelow, placed defendant at the scene of the accident. She was standing on her front porch on Pacific Avenue, the street where the crash occurred, when defendant walked up unexpectedly, and then left, walking toward Colfax Avenue. A neighbor of the home where the victim's black Navigator crashed, Benny Williams, testified that he saw someone walking toward Colfax Avenue. Defendant's fingerprints matched two of the lifts taken from the black Navigator. There was "very strong support" that defendant contributed to the sample taken from the rear passenger seat headrest.

A resident of the street where the accident occurred, Tony Johnson, knew defendant because he was the boyfriend of Johnson's niece, Whitelow. Johnson testified that he did not see defendant in the area of the accident on Pacific Avenue that night. Whitelow testified that the man she saw "rambling" in the black Navigator was not defendant. Another neighbor, Billy Harrison, testified that he initially thought the man pacing near the navigator was Williams's brother, Shawn, but then testified that he was 100% certain that it was not Shawn. The second

Uber driver, John Bracey, did not pick defendant out from a live lineup, but testified that he could not remember what the passenger looked like, and it was dark at the time of the ride. Regardless, this testimony is outweighed by the majority of the other testimony establishing defendant's identity.

Johnson testified that the man rambling in the doorway of the black Navigator was African American, and wearing dark black or navy clothing and a fitted baseball cap. Harrison also said that the man was wearing dark clothing. A baseball cap, jacket, and shoes were found by the police in a garbage can outside defendant's home. Defendant's mother, Felicia Carlton, and Whitelow said that the clothing belonged to defendant. It had suspected blood on it. The blood on defendant's jacket and hat matched the victim's DNA, and defendant was excluded as a major donor. The pattern of the blood stains indicated spatter or transfer of spatter. Spatter occurs when there is force acting on the blood, and transfer occurs when the stain comes into contact with the nonblood-bearing object. Johnson testified that the second time he went to the accident scene, the body of the victim was in a different position. The victim was no longer partially underneath the car. This indicated that the victim's body had been moved, and his blood likely would have come into contact with the person who moved him.

There was sufficient evidence to establish that a weapon was used in the perpetration of these crimes, and to convict defendant of armed robbery and felony-firearm. Whitelow testified that she had seen defendant with guns before, including shortly before the incident. Michigan State Police Trooper James Plummer found .25 caliber shell casings in the black Navigator. Officer Dean Molnar analyzed the .25 casings and the .25 bullets removed from the victim's body. He concluded that the bullets were fired from the same gun. The assistant medical examiner testified that the victim's gunshot wounds to his right shoulder and the back of his head were fatal. This outweighed defendant's testimony that he owned a .9 mm gun rather than a .25 caliber. Regarding armed robbery, the victim's wife testified that she never got the victim's cellular telephone back.

Defendant's testimony regarding his actions after the incident indicated consciousness of guilt. See, generally, *People v Unger*, 278 Mich App 210, 225-226; 749 NW2d 272 (2008). Defendant admitted over the telephone to Whitelow after the car accident that he had an argument with a man who tried to take his telephone. Whitelow did not initially tell the police this information because she wanted to protect defendant. The day after the accident, defendant asked Whitelow to change the telephone number of the cellular telephone that he used to order the Uber. He asked Whitelow to change his telephone number the next day because he did not want to "get implicated." Defendant admitted that on March 18, 2016, he was wearing the clothing found in the garbage can on Neff Street, and that he threw them out because blood was on the clothing, he was scared, and he did not want to "get implicated." Defendant's desire to change his telephone number and dispose of his clothing can be viewed as an effort to destroy the evidence of the crimes, thereby showing a consciousness of guilt. See *id*. at 226. Additionally, " '[e]vidence of flight is admissible to support an inference of 'consciousness of guilt' and the term 'flight' includes such actions as fleeing the scene of the crime.' " *Id*. (citation omitted). Defendant testified that after he exited the vehicle, he ran into an alley and hid. He did not stay at the scene and call the police, even though, according to his testimony, he was the victim, because he did not want to "get implicated."

Considering the record evidence in a light most favorable to the prosecution, the evidence was sufficient for a trier of fact to find that defendant was the perpetrator of felony murder, armed robbery, and felony-firearm. See *Robinson*, 475 Mich at 5.

## II. SUBSTITUTION OF COUNSEL

Second, defendant argues that he is entitled to a new trial because the lower court abused its discretion when it denied his request for substitution of counsel without an adequate inquiry into the breakdown of the attorney-client relationship. We disagree.

The decision regarding substitution of counsel is within the discretion of the trial court, and will not be reversed absent an abuse of discretion. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (citation omitted). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (citation omitted).

The Sixth Amendment guarantees a defendant's right to counsel. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). This right requires the state to appoint legal counsel to indigent defendants who request it. *People v Jackson*, 483 Mich 271, 278; 769 NW2d 630 (2009). However, an indigent defendant entitled to appointed counsel is not entitled to choose his own counsel. *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). Substitution of counsel is only warranted upon a showing of good cause and when the substitution will not unreasonably disrupt the judicial process. *Strickland*, 293 Mich App at 397 (citation omitted). The circumstances justifying good cause depend on the individual facts of each case. *Buie (On Remand)*, 298 Mich App at 67.

Good cause may be shown by inadequacy, lack of diligence, or disinterest on the part of counsel. *People v Flores*, 176 Mich App 610, 613-614; 440 NW2d 47 (1989). A genuine disagreement over the use of a substantial defense or a fundamental trial tactic establishes good cause; however, a mere allegation by the defendant that he lacks confidence in defense counsel does not. *People v Traylor*, 245 Mich App 460, 462-463; 628 NW2d 120 (2001). If the defendant asserts adequate cause, and there is a factual dispute over this assertion, the trial court should take testimony and render findings on the matter. *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973). This Court has recognized that " '[a] complete breakdown of the attorney-client relationship or disagreement over whether a particular line of defense should be pursued may justify appointing new counsel.' " *Buie (On Remand)*, 298 Mich App at 67, quoting *People v O'Brien*, 89 Mich App 704, 708; 282 NW2d 190 (1979). However, where a defendant fails to cooperate with counsel, counsel expresses a willingness to work with defendant, and the defendant fails to allege that his attorney was inadequate, lacking in diligence, or disinterested in the case, there is not enough evidence to prove that the attorney-client relationship is broken down to the extent that substitution of counsel is necessary. *Buie (On Remand)*, 298 Mich App at 68 (citation omitted). The defendant may not deliberately cause a breakdown of the attorney-client relationship by failing to cooperate, and then asserting good cause for substitution. *Id*.

On September 30, 2016, the court held a pretrial hearing on defendant's motion to quash the information. At this hearing, defense counsel informed the court that defendant had disagreements with him regarding the case. Defense counsel asked defendant if he wished to

-4-

have another attorney, and defendant said that he did. The court responded that defendant could have disagreements with another attorney, and that was not grounds for allowing defense counsel to withdraw. Then the court asked defense counsel if he wanted to withdraw, and defense counsel said that he would "hate to withdraw from trying to assist a client," but left it up to defendant. The court said that it was not up to defendant just because he had disagreements with defense counsel, and mere disagreements were not enough to withdraw from the case. Defense counsel then asserted that he had "no problems" and "no issues from staying on the case."

The court continued the hearing on defendant's motion to quash on October 14, 2016. At this hearing, defendant asserted that he wanted to make a motion to have the court appoint another attorney. The court stated that it already addressed this issue, denied defendant's previous motion, and still denied the motion. The court asked if anything new had developed other than the fact that defendant was not happy with the way defense counsel perceived and prepared for the case. Defendant addressed the court, saying that he previously wrote a letter and made a motion to the court, and thought that would be enough. The court said that it previously addressed this issue, and because there was nothing new, it denied defendant's motion. We note that defendant never filed a written motion in the lower court for substitution of counsel, and the letter referenced by defendant is not in the lower court file.

Defendant's jury trial was originally scheduled for November 2, 2016. On that date, defense counsel stated, "The record still reflects that my client still wishes to have another attorney." The court responded, "Well, it's up to him to decide if he wants to cooperate with his lawyer. But as long as we make a record that he refuses to cooperate with you, that's all we can do." Due to the high profile nature and media interest in this case, the court was unable to seat enough jurors, and the trial was adjourned. On November 3, 2016, when the jury trial was adjourned, the court stated:

> Now, I know that there has been discussions about the [d]efendant and his lawyer, it looks like about not getting along, but it looks as though everything is going well right now. I know [defense counsel] will be prepared to try this case. But if any issues like that come up, please come back to the [c]ourt so we can address them long before January 30th.

There are no indications in the record from November 3, 2016, through the jury trial in February 2017, that defendant voiced any further disagreements with defense counsel, or requested substitution of counsel.

The evidence in the lower court record demonstrates that defendant and defense counsel did not have an entirely amicable relationship. However, the record does not reflect that defendant established good cause to substitute counsel. See *Strickland*, 239 Mich App at 397. There was no showing that defense counsel was inattentive to his responsibilities, inadequate, or disinterested. See *Flores*, 176 Mich App at 613-614. Defendant merely asserted that there were disagreements with defense counsel. He did not specify any substantial defense or fundamental trial tactic over which he disagreed with defense counsel. See *Traylor*, 245 Mich App at 462-463. Because defendant failed to establish good cause, the trial court was not required to take testimony and render factual findings on the issue. See *Ginther*, 390 Mich at 441-442. Thus, the

trial court did not abuse its discretion when it denied defendant's request for substitution of counsel.

## III. OPPORTUNITY OF JURY TO REHEAR TESTIMONY OR REVIEW TRANSCRIPTS

Lastly, defendant argues that the trial court denied him a fair trial by foreclosing the jury's opportunity to rehear or review trial testimony in a preliminary jury instruction. We disagree.

To preserve a challenge to a jury instruction on appeal, the party must object to the proposed instruction or request that a different instruction be given before the jury deliberates. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000), citing MCL 768.29. In this case, defendant neither objected to the jury instruction regarding the availability of transcripts, nor requested an alternative instruction before deliberations. Claims of error regarding jury instructions are typically reviewed de novo. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). However, because this issue is unpreserved, review is for plain error affecting substantial rights. *People v Bosca*, 310 Mich App 1, 46-47; 871 NW2d 307 (2015). The defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even when the defendant establishes a plain error affecting substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and brackets omitted). Jury instructions must be reviewed in their entirety before determining if an error requiring reversal occurred. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

MCR 2.513(P)[1] provides as follows:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

---

[1] Defendant relied on MCR 6.414(H) in his brief on appeal. This court rule was repealed in 2011, and replaced by MCR 2.513(P), containing substantively the same language.

"A defendant does not have a right to have a jury rehear testimony. Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court." *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000). However, if the jury requests to rehear testimony, the trial court errs if it instructs the jury in a manner precluding the possibility of later reviewing the testimony. *Id*. at 208.

Defendant's jury trial began on February 1, 2017. Due to the high profile nature of the case, it took six days to select the jury. On February 9, 2017, the court delivered preliminary jury instructions, including the following:

> I want to caution you about transcripts. Many citizens and the public think that because we have a court reporter taking a record every day of the proceedings that we have written transcripts at the end of the day regarding those proceedings but in the state courts we don't have that. We can provide it under certain urgent circumstances but generally those transcripts are not available until months after the trial is over.

> So it's important that each of you pays close attention to the trial and be attentive so that you can collectively, the twelve of you at the end of this case[,] recall what the evidence is and make a fair and just decision in this case.

> Now if you get to a point where you just absolutely cannot recall, at that point you'll be deliberating the case and you can send a note out to the [j]udge saying that you need testimony read back in a certain area and be specific about that area and we'll provide that for you. But by and large we need you to be attentive and we also need you to recall the evidence.

> The trial is going to be lengthy but I think that the evidence will be easy to recall so I don't want you to be uneasy about this process.

Defendant cites only the first paragraph of this jury instruction in his brief on appeal, and argues that this precluded later review of testimony.

As an initial matter, although the jury sent three notes to the trial judge, it did not request to rehear trial testimony. Thus, MCR 2.513(P) was never at issue because it only applies to a "jury request" made "after beginning deliberation." Moreover, the first paragraph of the preliminary instruction regarding the length of time it would take to get a transcript should the jury request one during deliberations was simply to reinforce to the jury that it should not rely on the availability of transcripts. Rather, the instruction, when read as a whole, was meant to illustrate the importance of paying close attention to testimony during trial, which was appropriate. By making this statement before the prosecution's case in chief, the court gave the jury a warning that transcripts would not be available immediately, but this did not foreclose the possibility that transcripts would be available in the future. Regardless, the court then said that if the jury got to a point where it could not remember something, testimony could be read back. When read in its entirety, the jury instruction did not include an error requiring reversal. See *Aldrich*, 246 Mich App at 124. Therefore, the trial court committed no plain error in rendering this jury instruction.

Moreover, a review of the record does not indicate that the preliminary instruction had any effect on the outcome of the lower court proceedings. See *Carines*, 460 Mich at 763. The instruction was not repeated during the final jury instructions, and the court did not otherwise refer to the jury's ability or inability to review testimony. There is nothing in the record to suggest that the preliminary jury instruction caused the jury to refrain from asking to review trial testimony. The court received three notes from the jury during deliberations, and discussed them and the court's responses on the record before the verdict. The first note asked for a 30 minute break, the second requested a review of the jacket, hat, and cellular telephone records admitted as exhibits, and the third was the jury's verdict. The jury was permitted to view the jacket and hat in the courtroom with only the jury in attendance, and the cellular telephone records were sent into the jury room. Thus, the jury did not request to rehear any specific testimony, and the jury was not denied any request to review any evidence. Accordingly, defendant has failed to establish that the preliminary jury instruction was a plain error affecting his substantial rights. See *id*.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron