*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NIQUAY LAMAR EVANS,

        Defendant-Appellant.

UNPUBLISHED
November 17, 2025
12:44 PM

No. 370642
Kalamazoo Circuit Court
LC No. 2022-001141-FH

Before: LETICA, P.J., and M.J. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of possession of methamphetamine with intent to deliver (second offense), MCL 333.7401(2)(b)(*i*), MCL 333.7214(c)(*ii*), MCL 333.7413(1); felon in possession of a firearm (felon-in-possession), MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6); carrying a concealed weapon (CCW), MCL 750.227; assaulting, resisting, or obstructing a police officer (resisting), MCL 750.81d(1); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to a term of 20 to 50 years' imprisonment for possession of methamphetamine with intent to deliver, 10 to 30 years' imprisonment for felon-in-possession, 5 to 10 years' imprisonment for felon in possession of ammunition, 10 to 30 years' imprisonment for CCW, 304 days in jail for resisting, and two years' imprisonment for each count of felony-firearm. The felony-firearm convictions were to be served concurrently to one another and to the CCW and resisting convictions, but consecutive to their corresponding underlying convictions of possession of methamphetamine with intent to deliver, felon-in-possession, and felon in possession of ammunition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2022, officers from the Kalamazoo Department of Public Safety (KDPS), several of whom were also members of a drug task force known as the Kalamazoo Valley Enforcement Team (KVET), began searching for defendant due to an outstanding felony warrant for his arrest in an unrelated case. Sergeant Brian Cake and Officer Ben Ulman, the lead officers

in this case, testified that Officer Ulman eventually spotted defendant pulling into a gas station in a gray Chevrolet Traverse pulling a boat. Defendant also had a male passenger—later identified as George Turman—in the Traverse with him. The lead officers subsequently asked some patrol officers in the area to ensure that defendant could not flee and could be safely taken into custody.

Pursuant to Sergeant Cake's and Officer Ulman's requests over the radio, several KDPS patrol officers, including Officers Michael Ostrander, Cody Brink, and Emily Weston, attempted to effectuate the arrest while defendant was pumping gas.[1] As soon as Officer Brink activated his patrol vehicle's emergency lights, however, defendant fled on foot. Officer Brink immediately gave chase, while the other officers attempted to follow defendant in their patrol vehicles based on Officer Brink's location updates on the radio. Officer Brink testified that he briefly lost sight of defendant in an individual's backyard, but several other individuals in the neighborhood pointed in the direction that defendant ran, so he was able to regain sight of defendant and continue the foot pursuit. Officer Ostrander testified that, based on Officer Brink's location updates, he was eventually able to spot defendant, cut him off, and end his flight from the police. Officer Brink eventually caught up to defendant after Officer Ostrander had apprehended defendant in a church parking lot, at which point Officer Brink placed defendant in handcuffs and arrested him.

Following defendant's arrest, a few of the officers retraced defendant's flight path to search for anything he may have dropped or disposed of during his flight. Although the officers did not initially find anything useful, a few hours later, Robert Stephenson—a man living at the house where Officer Brink had briefly lost sight of defendant—called the police to report that he had found a plastic bag containing a white substance in the bed of his truck, which Officer Brink subsequently photographed and collected as evidence. Stephenson explained—to Officer Brink shortly after he discovered the bag, and then again at trial—that the bag did not belong to him, that he had not placed the bag in the bed of his truck, and that he did not see anybody else on his property following the police foot chase that occurred a few hours earlier. Forensic testing revealed that the plastic bag contained approximately 31 grams of methamphetamine.

Officers also searched defendant's person and his Traverse shortly after his arrest. A cell phone, a wallet, and $5,480 in cash (mostly in $100 bills) was found on defendant's person. Inside of defendant's Traverse, the officers found a box of 45-caliber ammunition and a loaded handgun magazine in the front driver-side door; a loaded handgun under the driver-side seat; a bag containing rifle ammunition and two empty AR-style magazines on the floor behind the driver's seat; two boxes of plastic sandwich bags that were, in Officer Ulman's experience, the type commonly used for packaging narcotics (one of which was unopened and located in the center

---

[1] Officer Ulman testified that, as the officers approached to effectuate defendant's arrest, he saw Turman immediately get out of defendant's Traverse and "[w]alk[] into the store real quick and then towards the bathroom," and so, at Officer Ulman's direction, another officer followed Turman inside and eventually detained him. After doing so, the other officer advised Officer Ulman that the officer had found some pills in the bathroom, which the officer then gave to Officer Ulman. According to Officer Ulman, those drugs, which Turman admitted belonged to him, turned out to be "oxycodones."

console, and the other of which was opened and on the floor behind the driver's seat); two digital scales in a box on the floor near the back seat (one of which was functioning, the other of which was not); a cell phone in the back passenger compartment; and several identifying documents belonging to defendant sitting on the seat located behind the driver's seat. Forensic testing of the scales revealed that the at least one of them had methamphetamine residue on it. None of the physical evidence collected contained identifiable fingerprints or DNA.[2]

Officer Ulman, who had significant experience handling cases involving narcotics and drug trafficking in his employment at KDPS and as a member of KVET, testified for the prosecution as an expert in the distribution of controlled substances. Officer Ulman testified about how methamphetamine was commonly packaged, what items were typically used to package methamphetamine for distribution, and how methamphetamine was commonly stored and distributed. He also explained the most common forms of methamphetamine, the most common ways a person might use methamphetamine, and the quantity and cost of methamphetamine ordinarily purchased and consumed by an average user. Officer Ulman testified that the methamphetamine seized in this case was, in his opinion, for distribution based on the weight of the drugs, the "large amount of money" found on defendant's person, and the additional cell phone, packaging materials, and digital scales with methamphetamine residue on them found in defendant's Traverse. Officer Ulman also testified that the bag in which the methamphetamine was found matched the type of plastic bags found in defendant's Traverse.

Defendant was convicted and sentenced as described. This appeal followed.[3]

## II. OTHER-ACTS EVIDENCE

Defendant first argues that testimony from several of the officers should not have been admitted at trial because it improperly commented on his prior criminal history. According to defendant, this testimony constituted inadmissible other-acts evidence because it was not offered for any proper nonpropensity purpose under MRE 404(b) and was substantially more prejudicial than probative under MRE 403.

In raising this issue on appeal, defendant specifically challenges the testimony of Officer Ostrander, Sergeant Cake, and Officer Ulman. At trial, when asked what information he had received regarding defendant on the night in question, Officer Ostrander testified that he was "advised that [defendant] had an outstanding warrant for his arrest" and that officers "wanted to make contact with [defendant], because he was a person of interest in a different unrelated

---

[2] All of the collected physical evidence was admitted at trial, along with photos of that evidence and a lab report detailing its specifics (including as to the bag of methamphetamine found in the bed of Stephenson's truck).

[3] When defendant filed his brief on appeal with this Court, he also filed a motion to remand to the trial court for an evidentiary hearing and attached an affidavit from himself as an offer of proof. This Court denied without prejudice defendant's motion to remand "for failure to persuade the Court of the necessity of remand at th[at] time." *People v Evans*, unpublished order of the Court of Appeals, entered February 7, 2025 (Docket No. 370642).

investigation that [the] detectives were investigating him for." Officer Ostrander also testified, in response to being asked whether he was already familiar with defendant, "I'm not sure if I had had contact with him before, but I had heard his name before, yes."

During direct examination, Sergeant Cake testified about how he became involved in this case, and the following exchange occurred:

> [*The Prosecution*]:  Sergeant Cake, how is it, I guess, on . . . [June 22,] 2022, that you came about with this—with involvement regarding [defendant]?

> [*Sgt. Cake*]:  Sure.  My team and I were aware that he had violent, I'm sorry, a felony warrant for his arrest.  And, our—.

> [*Defense Counsel*]:  Your Honor—.

> [*The Court*]:  The question and answer are struck.  The jury is to disregard that.  You can ask the question again, but the jury's to disregard that last answer in it's [sic] entirety.

The prosecution then asked the question again, and Sergeant Cake responded, "To arrest him on a felony warrant."  The rest of Sergeant Cake's direct examination proceeded without incident.

Officer Ulman was also asked at trial whether he was familiar with defendant prior to the night in question, to which he responded, "Very."  Officer Ulman did not follow up on this response or elaborate further.  Later, the prosecution asked Officer Ulman whether, after recovering a firearm from defendant's Traverse, he was "able to verify [if defendant] was able to legally obtain a firearm."  Officer Ulman responded, "Yes.  So, even prior to all of this, I investigated [defendant] previously, and I had run a criminal history—."  At that point, defense counsel objected, and the parties approached the bench for a brief discussion.  The trial court asked the prosecution "[w]hy [it was] asking [Officer Ulman] this question" given that the parties had already stipulated to the fact that defendant had previously been convicted of a specified felony for purposes of the felon-in-possession and felon in possession of ammunition charges.  The court also told the parties that "it might be a good time to stipulate in front of the jury" given that the prior stipulation was only in front of the court.  Immediately following the bench discussion, the court struck Officer Ulman's response to the question and instructed the jury to disregard it, and it informed the jury that the parties had "stipulated that the defendant had, in fact, been convicted of a specified felony previously" that prevented him from possessing a firearm or ammunition.

As defendant recognizes, he only objected to some of this testimony now challenged on appeal, so this issue is preserved—and thus reviewed for an abuse of discretion—as it relates to the objected-to testimony, but unpreserved—and thus reviewed for plain error affecting substantial rights—as it relates to the unobjected-to testimony.  See *People v Thorpe*, 504 Mich 230, 252-253; 934 NW2d 693 (2019); *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2019).

The trial court abuses its discretion when it renders a decision that "falls outside the range of reasonable and principled outcomes" or "makes an error of law."  *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 7.  "A decision on a

close evidentiary question ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252. "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A preserved nonconstitutional error is harmless and does not warrant reversal "unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted); see also MCL 769.26.

To obtain appellate relief under the plain-error standard, the defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant generally must show that the error "affected the outcome of the lower court proceedings." *Id*. And even when these three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

As noted, defendant argues that the officers' aforementioned testimony improperly commented on his criminal history and constituted inadmissible other-acts evidence under MRE 404(b). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," MRE 404(b)(1), but it may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident," MRE 404(b)(2). This rule is one of inclusion, not exclusion, and the list of proper purposes in MRE 404(b)(2) is nonexhaustive. *People v VanderVliet*, 444 Mich 52, 64-65, 73 n 30; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). For other-acts evidence to be properly admitted under this rule, (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by the danger of unfair prejudice. *Id*. at 74-75, citing MRE 404(b), 402, and 403. The court may also provide a limiting instruction to the jury regarding how to properly consider such evidence. *Id*. at 75, citing MRE 105.

Accordingly, we must first determine whether the challenged testimony was offered for a proper purpose and was logically relevant to that purpose. See *id*. at 74. A proper purpose exists when "the other-acts evidence is logically relevant to the stated purpose without relying on an impermissible propensity inference." *People v Galloway*, 335 Mich App 629, 638; 967 NW2d 908 (2020). Other-acts evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." MRE 401; see also *Galloway*, 335 Mich App at 638-639. As emphasized by our Supreme Court, other-acts "[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character," and it "is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010).

In this case, evidence of defendant's prior criminal history was clearly relevant to and offered for proper nonpropensity purposes. One such purpose was identity; when Officers

Ostrander and Ulman were asked if they were familiar with defendant prior to the night in question, they were then immediately asked, based on their responses, to identify defendant in the courtroom. See *Galloway*, 335 Mich App at 641 ("Identity of the perpetrator is an element in every criminal case."). Additionally, evidence of defendant's criminal history was necessary and duly relevant to proving the essential elements of the charged offenses. To sufficiently prove defendant's resisting charge, for instance, the prosecution was required to prove beyond a reasonable doubt that the officers were making a lawful arrest when they approached defendant at the gas station. See *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010); see also *People v Prude*, 513 Mich 377, 385-386; 15 NW3d 249 (2024). Sergeant Cake's and Officer Ostrander's testimony regarding defendant's outstanding felony arrest warrant at the time that the officers approached him was directly relevant to proving this element of the charged offense. And more generally, this testimony was necessary for the jury to understand why the police were looking for defendant in the first place and what initiated the series of events at issue. See *People v Sholl*, 453 Mich 730, 741-742; 556 NW2d 851 (1996) (holding that other-acts evidence may be admitted "to give the jury an intelligible presentation of the full context in which disputed events took place" because "the jury is entitled to hear the 'complete story' ") (quotation marks and citations omitted). Nothing in the record suggests that the challenged testimony was solely relevant to an improper propensity inference. See *Mardlin*, 487 Mich at 615-616.

Nor has defendant shown that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice under MRE 403. See *VanderVliet*, 444 Mich at 74-75. As discussed, there was significant probative value in the officers' testimony. And the mere fact that the testimony was prejudicial to defendant did not make it unfairly so. See *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009). Evidence is unfairly prejudicial "only where either a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, or it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 583 (quotation marks and citations omitted). Defendant has not shown how this standard is met here. And relatedly, the trial court struck questioning and testimony regarding defendant's criminal history that it found to go beyond what was necessary and proper for purposes of trial, and the court instructed the jury on how to treat both stricken evidence and other-acts evidence—all of which only further mitigated any danger of unfair prejudice. See *VanderVliet*, 444 Mich at 75. Given the significant probative value of the testimony and its minimally prejudicial effect, we cannot conclude that the testimony's probative value was outweighed, let alone *substantially* outweighed, by the danger of unfair prejudice under MRE 403. See *Galloway*, 335 Mich App at 646. Accordingly, the trial court did not abuse its discretion by admitting the officers' testimony. See *id*.; see also *Thorpe*, 504 Mich at 251-252.

Furthermore, to the extent that any part of this evidence might have gone beyond what was proper under MRE 404(b) and 403, defendant has not shown entitlement to relief as to either his preserved or unpreserved claims. See *Lukity*, 460 Mich at 495-496; *Carines*, 460 Mich at 763. To start, as noted, the parties expressly stipulated to the fact that defendant was previously convicted of at least one felony that precluded him from possessing a firearm and ammunition. Thus, regardless of the challenged testimony, evidence of defendant's prior criminal history was properly before the jury. And there was ample other evidence of defendant's guilt of the charged offenses. In particular, the prosecution presented significant physical evidence that was found in defendant's

Traverse, on defendant's flight path, and on or near defendant's person when he was apprehended. This evidence included a handgun, handgun and rifle ammunition, two AR-style magazines, two digital scales (at least one of which had methamphetamine residue on it), two cell phones, two boxes of small plastic sandwich bags, a total of $5,480 in cash (primarily in $100 bills), identifying documents belonging to defendant, and a 31-gram bag of methamphetamine. Multiple officers also testified that defendant fled from police as soon as they approached him at the gas station, despite the fact that an officer had activated the lights on his patrol vehicle and commanded him to stop. Stephenson's and Officer Brink's testimony established that defendant's flight path passed by the location where the bag of methamphetamine was found, and Officer Brink noted that he lost sight of defendant for "[a] few minutes" at Stephenson's address. There was also expert opinion testimony from Officer Ulman that much of the physical evidence found, including the drugs, scales, plastic bags, multiple cell phones, and large amount of cash, was consistent with distribution of methamphetamine. Given the significant, untainted evidence of his guilt (which included a stipulation to a prior felony conviction), defendant has failed to show how the testimony he challenges regarding his prior criminal history might have affected the outcome of his trial.

In sum, we see no error in the admission of the challenged other-acts evidence, and defendant has not shown that he is entitled to relief on this issue.[4]

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next challenges the sufficiency of the evidence underlying his conviction of possession of methamphetamine with intent to deliver.

In determining whether the record evidence is sufficient to sustain a conviction, we review the evidence de novo in the light most favorable to the prosecution and consider whether it was sufficient "to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (quotation marks, citations, and alteration omitted). It is the jury's role, as factfinder, to determine "the weight of

---

[4] Defendant also appears to argue that the prosecution committed misconduct by repeatedly eliciting the challenged testimony about defendant's criminal history, and that the trial court abused its discretion by not admonishing the prosecution for doing so. But defendant does not provide any meaningful argument or identify any factual or legal support for these claims, and a party may not simply announce his position and expect this Court to discover and rationalize the basis for his claims. See *People v Burkett*, 337 Mich App 631, 639 n 4; 976 NW2d 864 (2021). Nor, for that matter, do the claims have apparent merit. Regarding his unpreserved prosecutorial-misconduct claim, for the reasons discussed above, defendant has not established plain error affecting his substantial rights. See *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010). And the record does not support his claim that the court failed to duly admonish the prosecution; indeed, when defendant objected to Sergeant Cake's testimony, the court *did* admonish the prosecution for asking the question it did despite the parties' earlier stipulation.

the evidence [and] the credibility of witnesses," *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), and "a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

Defendant argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he possessed the methamphetamine on the night in question. We disagree.

In proving possession, "[t]he essential issue is whether the defendant exercised dominion or control over the substance," and the prosecution need only show that the defendant had "dominion or right of control over the drug with knowledge of its presence and character." *People v Baham*, 321 Mich App 228, 247-248; 909 NW2d 836 (2017) (quotation marks and citations omitted). Defendant correctly notes that there was no direct physical or testimonial evidence demonstrating that he physically possessed the methamphetamine on the night in question, but neither direct evidence nor actual physical possession is required to satisfy this element. See *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645 (2000) ("Possession may be actual or constructive and may be proved by circumstantial evidence.") (quotation marks and citation omitted); *People v Brown*, 279 Mich App 116, 136; 755 NW2d 664 (2008) (noting that "[a]ctual physical possession is not required to meet the possession element"). And although possession requires more than a defendant's mere presence, circumstantial evidence and all reasonable inferences arising therefrom are enough to establish constructive possession when they "indicate[] a sufficient nexus between the defendant and the controlled substance." *People v Meshell*, 265 Mich App 616, 622; 696 NW2d 754 (2005).

As already discussed, the prosecution presented ample evidence demonstrating that defendant constructively possessed the methamphetamine. This evidence included: testimony that defendant, when fleeing from police, passed by where the 31-gram bag of methamphetamine was found; drug-related paraphernalia found in defendant's Traverse, including at least one digital scale with methamphetamine residue on it and plastic sandwich bags similar to the one in which the methamphetamine was found; a large amount of cash and a cell phone found on defendant's person after his arrest; a second cell phone found in his Traverse that police determined did not belong to his passenger, Turman; and expert opinion testimony from Officer Ulman that the amount of methamphetamine found, as well as the evidence found in defendant's vehicle and on his person, was consistent with drug distribution. Additionally, Stephenson testified that the bag of methamphetamine was not in the bed of his truck prior to defendant's police chase, and he did not see anybody else on his property between the time of the police's pursuit and subsequent search of the area, and the time that he discovered the bag in the bed of his truck.

When reviewing this evidence in a light most favorable to the prosecution, a rational jury could have readily found beyond a reasonable doubt, based on the evidence and all reasonable inferences arising therefrom, a sufficient nexus between defendant and the methamphetamine such that defendant constructively possessed it. See *Harris*, 495 Mich at 126; *Meshell*, 265 Mich App at 622. Accordingly, we do not see merit in defendant's challenge to the sufficiency of the evidence underlying his conviction of possession of methamphetamine with intent to deliver.

## IV. RES GESTAE WITNESSES

Defendant also argues in his supplemental Standard 4[5] brief that the prosecution violated MCL 767.40a(1) by failing to provide to the defense the names of several res gestae witnesses. Because defendant failed to raise this issue in the trial court below, the issue is unpreserved and thus reviewed for plain error affecting substantial rights. See *Allen*, 507 Mich at 604, 614.

Defendant's claim centers on Officer Brink's testimony that, while he was chasing defendant on foot, multiple individuals in the neighborhood assisted him in locating defendant. According to defendant, the prosecution violated MCL 767.40a(1) by not identifying these individuals in any witness list given to the defense, and these individuals would have provided exculpatory testimony for him. The statute, however, only requires the prosecution to provide the names of *known* res gestae witnesses. MCL 767.40a(1); see also *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995) (holding that MCL 767.40a "does not impose an obligation on the prosecutor to discover and produce unknown witnesses, either by the exercise of due diligence or some lesser burden"). Here, it does not appear from the record that any identifying information about these individuals was known to either the prosecution or the investigating officers, and defendant has offered nothing to indicate otherwise. For instance, both at the preliminary examination and at trial, Officer Brink testified that he did not speak to any of these individuals during the foot chase or after defendant's arrest because they had assisted him by simply pointing in the direction that defendant was running.

Defendant, for his part, has not suggested that he knows the identity of these individuals, nor has he in any way substantiated his belief that their testimony would have been exculpatory. Nothing in the record before us indicates that these individuals would—or could—have testified to anything beyond their observation of defendant running through the neighborhood and their brief (and silent) assistance of Officer Brink during the foot chase, all of which was already described during Officer Brink's testimony. And although defendant maintains that these individuals would have testified that they did not see him put a bag of methamphetamine in the bed of Stephenson's truck, he offers nothing to support that assumption, nor anything to indicate that any of the individuals would have even been in a position to see him do so.

In sum, defendant has not demonstrated any plain error in the prosecution's failure to identify these individuals under MCL 767.40a(1), nor has he shown any prejudice as a result; accordingly, he is not entitled to relief on this issue. See *Carines*, 460 Mich at 763; *Burwick*, 450 Mich at 287, 289.[6]

---

[5] Defendant filed a supplemental Standard 4 brief pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

[6] Defendant also states in a conclusory manner that the prosecution's noncompliance with the statute constituted a *Brady* violation. But defendant provides no argument as to this point, nor does he provide any legal or factual support for it. See *Burkett*, 337 Mich App at 639 n 4.

## V. RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Defendant next raises two related but distinct challenges regarding his right to the effective assistance of counsel. In his supplemental Standard 4 brief, defendant argues that he was denied his right to assistance of counsel because his appointed counsel was removed and replaced six different times without his request for a new attorney or a hearing to determine whether there was good cause for a substitution of counsel. And in his appellate brief filed by counsel, defendant argues that his trial counsel was ineffective for failing to investigate and call as witnesses (1) the individuals that assisted Officer Brink during the foot chase, and (2) Turman, the passenger in defendant's vehicle on the night in question. Defendant has not shown entitlement to relief as to either of these claims.

## A. PRESERVATION AND STANDARDS OF REVIEW

Whether counsel was ineffective presents a mixed question of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because defendant did not object to the substitution of his trial counsel below, defendant's challenge to the trial court's decision regarding the substitution of counsel is unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019).

## B. SUBSTITUTION OF COUNSEL

The Sixth Amendment of the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. *People v Buie (On Remand)*, 298 Mich App 50, 61; 825 NW2d 361 (2012). "This right to counsel extends to all critical stages of the proceedings where counsel's absence might harm [the] defendant's right to a fair trial." *Id*. (quotation marks and citations omitted). "Critical stages" include most pretrial proceedings. *Missouri v Frye*, 566 US 134, 140; 132 S Ct 1399; 182 L Ed 2d 379 (2012). "[A] total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal." *Buie*, 298 Mich App at 61-62 (quotation marks and citation omitted).

Although an indigent criminal defendant "is guaranteed the right to counsel," he or she "is not entitled to have the attorney of his [or her] choice." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citations omitted). "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. (quotation marks and citations omitted). It is ultimately "a defendant's responsibility to seek a hearing" regarding substitution of counsel, and

---

Regardless, for the same reasons discussed above, defendant's claim is meritless. See *Burwick*, 450 Mich at 287, 289.

a full adversarial proceeding is not required to duly address the matter. *People v Ceteways*, 156 Mich App 108, 118-119; 401 NW2d 327 (1986).

The trial court in this case did not remove and appoint counsel as much as defendant claims—nor did it do so sua sponte or without a finding of good cause. The record makes clear that Kalamazoo Defender Group (KDG) was appointed as defendant's counsel at the start of this case and remained as such throughout most of the pretrial proceedings. Although a handful of different attorneys filed documents or appeared at hearings on defendant's behalf, all of those attorneys were part of KDG, and defendant has offered nothing to indicate that their varying appearances were impermissible. See MCL 780.991(2)(d) (requiring that "[t]he same defense counsel continuously represent[] and personally appear[] at every court appearance throughout the pendency of the case" but that "indigent criminal defense systems may exempt ministerial, nonsubstantive tasks, and hearings from this prescription"). In actuality, there was only one substitution of counsel during the pretrial proceedings—defendant's trial counsel replaced KDG. But KDG requested the substitution due to a conflict of interest, which is generally considered "good cause" for a substitution of counsel. See MRPC 1.7 (prohibiting an attorney from continuing to represent a client when there is a conflict of interest that affects the attorney's ability to effectively represent the client); see also MRPC 1.8, 1.9, 1.10; *People v Denomie*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2021 (Docket No. 353357), p 3 (recognizing that "good cause" for substitution of counsel may be shown when there is a legitimate conflict of interest affecting the attorney's ability to effectively represent the client).[7] Defendant also expressly stipulated to this substitution of counsel, and the court's order substituting counsel was based on that stipulation.

Lastly, throughout the duration of this case, defendant was never without representation. Cf. *Buie*, 298 Mich App at 61-62. Additionally, the substitution itself happened approximately two months before defendant's trial began, and there is nothing to indicate that the substitution unreasonably disrupted the judicial process. See *Strickland*, 293 Mich App at 397. Nor is there anything to suggest that removal of KDG as defendant's counsel affected the outcome of the proceedings in any way. On this record, defendant has not shown plain error affecting his substantial rights. See *Bailey*, 330 Mich App at 53-54.

## C. FAILURE TO INVESTIGATE AND CALL WITNESSES

We also do not see merit in defendant's challenge to his trial counsel's performance. "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*, 315 Mich App at 672. This Court presumes counsel was effective, and a defendant carries a heavy burden to overcome that presumption. *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022). This includes "overcom[ing] the strong presumption that counsel's performance was born from a sound trial strategy." *People v*

---

[7] Unpublished opinions are not binding on this Court, but they may be considered persuasive. *People v Roy*, 346 Mich App 244, 251 n 2; 12 NW3d 183 (2023).

*Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). That said, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citation omitted). The defendant bears the burden of establishing the factual predicate of his claim. *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020).

As noted, defendant claims counsel provided ineffective assistance by failing to investigate and call as witnesses Turman (the passenger in defendant's vehicle on the night in question) and the individuals that assisted Officer Brink during his pursuit of defendant. Regarding the individuals that assisted Officer Brink, defendant does not identify anything in the record to support his claim; rather, he simply states in a conclusory manner that his trial counsel failed to investigate the individuals as potential witnesses and that, if called, they would have been able to provide exculpatory evidence. The sole factual support defendant offers for this claim on appeal is his own affidavit, but that only states that "no attempt was made to bring these witnesses to court to testify." As discussed above, defendant has not identified any of these individuals, made any offers of proof regarding their testimony, or shown how any such testimony would have added anything meaningful in favor of the defense. See *id*. Additionally, as discussed, these individuals were not known witnesses to the prosecution and were therefore not disclosed to defense counsel on a witness list, and there is nothing to indicate that they were otherwise known to defense counsel or that counsel should have sought out their testimony. If anything, defendant's own affidavit undermines any such conclusion, recognizing that his counsel's "closing argument was built upon these res gestae witnesses not seeing anything being dropped or thrown in the area." Defendant offers nothing to support the notion that this argument would have been strengthened by actually calling these individuals to testify, or that counsel provided ineffective assistance by making the argument without doing so.

And as to Turman, defendant admits that he was known to defense counsel because he had been identified as a potential witness in the prosecution's initial witness list, and that counsel ultimately "*made the decision* not to call him as a witness." (Emphasis added.) Defendant asserts that counsel made this decision without first investigating Turman, but again, defendant does not offer anything to support this assertion beyond a conclusory statement to that effect in his own affidavit. For instance, defendant does not provide an affidavit from Turman indicating that counsel did not speak to him about testifying or what his testimony would have been had he been called as a witness, nor does defendant himself even describe what Turman's testimony may have been. See *id*. And the record, for its part, indicates that counsel considered Turman as a potential witness but ultimately—and reasonably—opted not to call him at trial. There was discussion between the trial court and the parties regarding Turman during both a motion in limine and an objection at trial, as well as testimony about him (as the passenger in defendant's vehicle on the night in question) during the direct examination of multiple officers involved in defendant's apprehension and arrest. Defense counsel also repeatedly sought to elicit more testimony about Turman as the passenger in defendant's vehicle during cross-examination, and counsel's closing argument focused heavily on the fact that Turman, as the passenger, had equal access to all of the items found in defendant's vehicle and had admitted to officers that he had left other controlled substances in the gas station bathroom as soon as he saw the police pull in. Based on all of this, it is clear that defense counsel was attempting to create reasonable doubt by establishing that an individual other than defendant had ready access to the drugs and drug paraphernalia in question.

There is nothing to indicate that this defense strategy was unsound or that it would have been furthered by eliciting testimony from Turman himself—the very person on whom the defense was attempting to shift blame for the alleged crimes.

Counsel's decisions regarding what, if any, witnesses to call at trial are generally a matter of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and defendant has offered nothing that might overcome the "strong presumption" that trial counsel's actions and decisions with respect to the potential witnesses at issue were reasonably strategic, see *Ackley*, 497 Mich at 388-389; *Trakhtenberg*, 493 Mich at 52. Nor has defendant offered anything to show that, had counsel called these individuals as witnesses as defendant maintains she should have, it is reasonably probable that the outcome of his trial would have been different. See *Shaw*, 315 Mich App at 372. Accordingly, defendant has not demonstrated entitlement to relief on this basis.[8]

## VI. SENTENCING

Lastly, defendant raises two challenges to his sentence for his conviction of possession of methamphetamine with intent to deliver. In his supplemental Standard 4 brief, defendant challenges the enhancement of his sentence. In his appellate brief filed by counsel, defendant challenges the proportionality of his within-guidelines sentence. Neither challenge has merit.

## A. STANDARDS OF REVIEW

We review sentencing issues for an abuse of discretion, but we review any underlying issues involving statutory interpretation de novo. *People v Fetterley*, 229 Mich App 511, 525; 583 NW2d 199 (1998). Defendant's proportionality challenge to his within-guidelines sentence is reviewed for reasonableness. See *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023) (*Posey I*). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

---

[8] Defendant also asks this Court, in the alternative, to remand for an evidentiary hearing on his ineffective-assistance claims. Defendant, however, has failed to "demonstrate[] any issue for which further factual development would advance his claim[s]." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009); see also MCR 7.211(C)(1)(a) (providing, in relevant part, that a motion to remand must show "that development of a factual record is required for appellate consideration of the issue" and "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing"). As discussed, the existing record indicates that defendant's trial counsel did not perform ineffectively with respect to the potential witnesses in question, and defendant's affidavit, even when accepted on its face, does not cast meaningful doubt on that conclusion. Defendant has thus failed to show that an evidentiary hearing is necessary to properly dispose of his claims.

-13-

## B. ENHANCEMENT OF SENTENCE

Defendant argues that he is entitled to resentencing because the trial court enhanced his sentence under the relevant portions of both the habitual offender statute (HOS), MCL 769.12, and the Public Health Code (PHC), MCL 333.7413(1), which the court was not allowed to do. In support, defendant points to his judgment of sentence (JOS), emphasizing that the court agreed at a postsentencing hearing that "all references to the [PHC] enhancement would be removed," but that his JOS nonetheless continues to reflect enhancement under the PHC. Defendant appears to take issue with the fact that his JOS lists "2nd or subsequent offense notice" with the corresponding charge code next to his conviction for possession of methamphetamine with intent to deliver. But this, in itself, does not mean that defendant actually received an enhanced sentence under the PHC. Rather, it only indicates, consistent with the felony information in this case, that defendant's conviction of possession of methamphetamine with intent to deliver was his second or subsequent offense and that defendant received notice that that *may* result in an enhanced sentence under the PHC. See MCL 333.7413(1).

It is also clear from the record that the court only enhanced defendant's sentence under the HOS, and did not also do so under the PHC. The trial court seemed to have initially sentenced defendant as a fourth-offense habitual offender while also enhancing his guidelines range under the PHC, but after much discussion with the parties and further research into the issue, the court expressly acknowledged that it had discretion to enhance defendant's sentence under either the HOS or the PHC, but not both. The court also reiterated at a postsentencing hearing that it was only sentencing defendant as a fourth-offense habitual offender and expressly noted that it was "just putting" the PHC provision on the JOS "as notice[.]" The court also stated that it would remove all references to the PHC-enhanced guidelines range from defendant's presentence investigation report (PSIR) and sentencing information report (SIR), and the PSIR and amended SIR reflect those changes. And the JOS, for its part, accurately reflects that defendant was only sentenced as a fourth-offense habitual offender, as does the actual sentence imposed. Accordingly, on this record, defendant has not demonstrated that he is entitled to sentencing relief on this basis.

## C. PROPORTIONALITY OF SENTENCE

Defendant also argues that his within-guidelines sentence of 240 to 600 months' (20 to 50 years') imprisonment for his conviction of possession of methamphetamine with intent to deliver was disproportionate and unreasonable. But this challenge too lacks merit.

A proportionate sentence generally considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Other relevant factors to be considered include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's

potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

A within-guidelines sentence is presumptively proportionate, and "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Posey I*, 512 Mich at 359.

Defendant asserts that the trial court failed "to personalize or justify" his 240-month within-guidelines minimum sentence, which rendered his sentence disproportionate to the offense and the offender. But since he is challenging a within-guidelines sentence, defendant bears the burden of overcoming the presumption of that sentence's proportionality, see *id.*, and defendant wholly fails to explain why the sentence he received was not proportionate. Defendant does not identify anything about himself or the sentencing offense that might have rendered the sentence disproportionate. Nor, for that matter, does defendant challenge any aspect of the trial court's scoring of the guidelines, which themselves reflect the principle of proportionality. See *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017).

Defendant's sole argument on appeal is that the trial court did not adequately justify the sentence on the record. The record, however, belies this claim. At sentencing, the trial court expressly stated that it believed that the 240-month minimum sentence was appropriate because defendant had a very lengthy and "atrocious" criminal history dating back to at least the early 2000's and had a "huge variety of different charges" during that time, "[m]any of which [we]re assaultive." The court also acknowledged the comments defendant made at the hearing in support of his request for a lenient sentence but concluded that the information in the PSIR "[d]id not line up" with that request. The record amply supports these findings. In addition to the conduct at issue in this case, defendant's PSIR indicated that defendant had nine prior felony and sixteen prior misdemeanor convictions dating back to 2005, several of which were violent; had a history of resisting arrest and absconding; had a history of committing new crimes while out on bond, probation, or parole for previous offenses; had eight other felony charges (stemming from four unrelated criminal cases) pending at the time of sentencing; and had committed five of those eight alleged felony offenses while out on bond for the offenses in this case. Defendant does not address the court's offered reasoning or explain why the presumption of his sentence's proportionality does not hold up in light of it. See *Posey I*, 512 Mich at 359; see also *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 4 (noting generally that "there is nothing in *Posey* [*I*] suggesting that a sentencing court needs to expressly explain why a within-guidelines sentence is reasonable and proportionate" and deeming the court's discussion of the imposed sentence in that case sufficient to facilitate appellate review). Defendant has not overcome the presumption that his within-guidelines sentence was reasonable and proportionate and, accordingly, he has not demonstrated that he is entitled to sentencing relief on this basis. See *Posey I*, 512 Mich at 359; *Steanhouse*, 500 Mich at 459-460.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Philip P. Mariani

-15-